The following is the opinion.of the surrogate:
Tennant, S.
George Clarke died intestate at the village of Richfield Springs, Otsego county, on the 9th day of July, 1889, leaving him. surviving a widow, several children and other next of kin, and upwards of 230 creditors.
On the 26th day of September, 1889, a petition was filed by Ichabod C. McIntosh, a creditor of the decedent, for the appointment of an administrator. A citation was issued directed to the widow and next of kin of the decedent, returnable on the 8th day of October, 1889, on’whieh day none of the next of kin appeared, but D. F. Searle appeared specially for J. I. Sayles, a creditor, and E. M. Harris also appeared specially for E. L. Hinckley, a creditor, and objected to the proceedings upon the ground that all of the persons having a prior or equal right to letters of administration with the petitioner had not been cited. The surrogate thereupon held that all of the creditors of the decedent should be cited and brought in and made parties to the proceeding, and issued a supplemental citation to said creditors for that purpose. The proceedings were thereupon adjourned from time to time until the 7th day of May, 1890, in order to enable the petitioner to obtain service of the supplemental citation upon the necessary parties. When all of the proper parties had been finally served, and proofs of such service had been filed, the only person who then appeared in the proceeding was Daniel R. Bennett, a creditor, who interposed an answer to the petition. The main question raised by the answer, and as to which a large amount of evidence was given on the trial, is whether the decedent, at the time of his death, was a resident of the county of Otsego, it being claimed by the petitioner that he then was a resident of the town of Springfield, Otsego county, while, on the other hand, it is insisted that he was a resident of Warren, Herkimer county.
If the decedent, at the time of his death, was a resident of the *14 town of Warren, Herkimer county, confessedly, this court has no jurisdiction to grant letters of administration upon his estate. Code, § 2476, subd. 1.
The following principles, applicable to the inquiry, appear to be fundamental and recognized by legal writers upon the subject and by the courts. The term “ residence ” simply means a settled and fixed abode, of a character indicating permanency, at least for an indefinite time. It signifies his permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning. The domicil or residence of origin is presumed to continue until a new one is acquired. The burden of proof unquestionably lies on the party who asserts the change. To effect a change of residence there must be not only an intention to abandon the former residence and to acquire another as his sole settled and fixed place of abode, but also the fact of an actual change must be established. In other words, the fact and the intent must concur. Lord Cranworth, in Aikman v. Aikman, 3 McQueen, 877, very concisely stated the rule to be that the “change must be anima etfacto." Therefore, it is said that direct expressions of intention may be worth little as evidence even of the intent, because acts are usually more cogent evidence of it than mere declarations. Thomas, J., in Cole v. Cheshire, 1 Gray, 444, said that “ the intent is manifested by what he does and by what he omits to do or to say.” And so Rapallo, J., in Dupuy v. Wurtz, 53 N. Y., 562, said: “ Acts are regarded as more important than declarations, and written declarations are usually more reliable than oral ones.” Dupuy v. Wurtz, 53 N. Y., 556: Abbott’s Trial Ev., 102 to 109; 5 Am. & Eng. Ency. of Law, 857 to 881, notes and cases there cited.
It is undisputed that the decedent was born at Hyde Hall, in the town of Springfield, Otsego county, sixty-seven years ago, and that Hyde Hall was his home and residence from his birth until the alleged change in December, 1888. The contestant having the onus to establish that he changed his residence from Springfield, and that he had acquired a new residence in Warren, Herkimer county, has entirely failed to prove such change of residence within the rules above stated. It is true, the declarations of Mr. Clarke have been proven to the effect that he intended to change his residence, and that he had changed his residence, first, in December, 1887, to Rome, next, in February or March, 1888, from Rome to Fonda, and finally May 7, 1888, from Fonda to Warren, Herkimer county. But a careful examination of the evidence demonstrates, I think, quite conclusively that Mr. Clarke had no such Iona fide intention. It fails to show that he did actually change his "residence. The fact of change is not proven. If he really intended to change his residence in the manner indicated by his declarations, his acts then, and ever since, were entirely at war with the idea of such change. For instance, near the evening of May 7, 1888, he directed his servant to take him from Hyde Hall, where he was, to Warren, a little hamlet about three miles distant. The servant did so. He took with him only a traveling bag. Reaching the hotel at Warren, he directed his servant to come after *15 him the next morning. To the proprietor of the hotel he stated that he wished to take up his residence in Warren and to make the hotel his home. He was assigned a room and remained at the hotel over night, and obtained his breakfast the following morning. After breakfast, his servant having come after him, he packed his hand bag that he had taken with him and departed, and never returned to the hotel. He never resided in Warren in point of fact, and his stay there only during the one night above referred to was not unlike that of the temporary sojourn of any traveller. The weight of evidence, I think, is decidedly on the side that Mr. Clarke retained his residence at Hyde Hall down to the time of his death, as he had all through his life. As late as April 27, 1889, less than two months and a half before his death, he joined with his wife in the conveyances of two parcels of real estate, and then signed and acknowledged two deeds. In both of these deeds he describes and recites his residence as “ of the town of Springfield, Otsego county, H. Y.”
I conclude, therefore, that the decedent’s residence, at the time of his death, was in the town of Springfield, Otsego county, and that it is my duty to award letters of administration upon his estate, unless some other reason exists.
It is claimed by the contestant that the court should not appoint an administrator of the decedent’s estate, because he alleges that the deceased did not own any property at the time of his death.
On the 14th day of April, 1887, the decedent executed a general assignment of his property, excepting such property as is exempt by law from levy and sale under execution, to George Barnard, for the alleged benefit of his creditors.
Mr. Clarke still remained the owner of a span of horses and some other articles of personal property, which were exempt from levy and sale under execution, notwithstanding said general assignment. In his lifetime two actions were brought in the supreme court against Clarke and Barnard, the assignee, to set aside the said general assignment as fraudulent and void. Both of said actions were pending undetermined at the time of the decedent’s death and are still pending.
The case, therefore, is eminently one requiring an administrator to be appointed. The actions pending in the supreme court to set aside the assignment can not be prosecuted any farther until an administrator is appointed and substituted as a party defendant therein in place of the decedent. The very numerous creditors of the decedent ought surely to be afforded the opportunity to prosecute their claims, which they can not do unless an. administrator is appointed. Besides, the decedent did own some property when he died, which should be administered.
Upon the trial one of the attorneys of the contestant, who also is one of the attorneys of Mr. Barnard, the defendant’s assignee, and one of the attorneys for the defendants in said action to set aside the assignment, at the request of, and in behalf of the assignee, made a tender to the attorneys for the petitioner of the sum of $6.50. The tender was re *16 fused, and then it was deposited with the surrogate, who still has the same in his possession. This tender was made during the progress of the trial, after the petitioner had incurred large expense and counsel fees in and about the commencement of the proceedings, including the publication of the citation and the service thereof on more than two hundred and thirty parties. There was no tender made of such costs and expenses.
I have been unable to find any authority, in law, for the making of a tender in a proceeding like this, and under the circumstances presented by the evidence, so as to give it the effect of defeating the proceedings altogether. However that may be, it must be true that the tender as here made of simply the amount of the petitioner’s claim, without tendering also the costs and expenses incurred, must be entirely nugatory and inoperative.
The Code provides, that in the cases where it can be done at all, a tender after suit must include the costs of the action to the time of the tender. Code, § 731.
The citation in this matter required the next of kin and creditors to appear and show cause “ why a decree should not be made and entered, granting letters of administration of the goods, chattels and credits of George Clarke, late of the town of Springfield, Otsego county, N. Y, deceased, to Ichabod C. McIntosh, a creditor of said deceased,” etc. It is doubtful that the surrogate has any authority to appoint an administrator except a “ party to the special proceeding, who appears to be entitled thereto.” Code, § 2666.
Of all of the numerous parties cited to show cause why the petitioner, Ichabod C. McIntosh, should not be appointed administrator of the estate, none of them have interposed any valid objection to his competency to act as such administrator, nor is there any proof before me that he is legally incompetent to so act. The presumption is, that he would discharge his official duty, as he is bound to do by the oath he is required to take and file with the surrogate. Should hereafter he be guilty of dereliction of that duty, ample remedy exists to any party who may be aggrieved thereby.
An order should therefore be entered appointing Ichabod C. McIntosh administrator of the goods, chattels and credits of George Clarke, deceased, and upon his executing and filing with the surrogate a bond in the penal sum of $500 in the form required by law, with two sufficient sureties to be approved by the surrogate, letters of administration should be issued to him.
The costs and expenses of this proceeding before the filing of the answer should be paid to the petitioner out of and from the estate of the decedent. This is just, because if no answer had been interposed and no contest had been made, the same proceedings would necessarily have had to be taken and the same expense incurred that were taken and incurred.
But the costs and disbursements of the petitioner, after the answer was filed, to be taxed on notice, should be charged upon, and paid by the contestant, Daniel B. Bennett, personally. He appears in this proceeding by the same attorneys who represent *17 the assignee named in the assignment, and who represent the defendants in the actions now pending to set aside said assignment as fraudulent and void. He was in the employ of Mr. Clarke for several years before he executed the assignment, and since that time has been employed by the assignee, and he is now in his employ. Though • a creditor himself of the deceased, for some reason he has stubbornly opposed the appointment of an administrator of this estate. I am well satisfied that his contest has not been in good faith, but in the interest of the assignee for the purposes of delay. Therefore, it is right that he should be charged personally with the costs and expenses of such contest, as above stated.
Sayles, Searle & Sayles, for app’lt; Carlton B. Pierce, for resp’t.
Martin, J.
The principal, and substantially the only, grounds upon which the contestant and appellant claimed that letters of administration should not be granted upon the estate of the decedent were: 1. That the intestate was not, at the time of his death, a resident of the county of Otsego; and 2, that at that time he had no property or estate.
We have carefully examined the proof in this case, and regard it as sufficient to justify the findings of the learned surrogate, both that the intestate was such resident and had property at the time of his decease.
We are also of the opinion that the proof and proceedings in the case fully justified the surrogate in finding that the appellant did not act in good faith in contesting the granting of letters of administration to the respondent, and that "the court properly imposed upon the appellant the payment of the costs and dis-. bursements accruing after answer by him.
Any further or more extended discussion of these questions is rendered unnecessary by the clear and comprehensive opinion delivered by the learned surrogate in the court below.
We have examined the various rulings of the surrogate to which our attention has been called in the brief of the appellant, but have found none that were prejudicial to the appellant, and, hence, that would justify a reversal of the decree herein, or that requires special consideration.
Decree affirmed, with costs.
Hardin, P, J., and Merwin, J., concur.